UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAUREN FRAZIER,

    Plaintiff,

v.                                                             Case No. 8:08-cv–02396–T–24 TGW

HSBC MORTGAGE SERVICES, INC.,

    Defendant.
_____/

## **O R D E R**

This Court now considers a motion for partial summary judgment filed by Plaintiff Lauren Frazier (Doc. 16) and a motion for summary judgment filed by Defendant HSBC Mortgage Services, Inc. ("HSBC"). (Doc. 17). Both motions were opposed. (Docs. 18, 19, 22).

Frazier filed this complaint in U.S. District Court to recover damages from HSBC, alleging that HSBC violated the Servicemembers Civil Relief Act ("SCRA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Florida Consumer Collection Practices Act ("FCCPA").

For the reasons explained in this order, the Court finds that no genuine issue of material fact remains on the first two federal claims and enters summary judgment for Defendant on these two claims. Because no federal claims remain and the third claim arises under Florida law, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise jurisdiction on the third claim.

1

## BACKGROUND

### A. Facts Relevant to the Servicemembers Civil Relief Act

On December 13, 2005, Plaintiff Lauren Frazier entered into a Home Equity Line of Credit Agreement and Promissory Note ("HELOC Promissory Note") with Secured Funding Corporation in the principal amount of $42,200.00. (Doc. 18, Ex. A). Contemporaneously with the execution of the HELOC Promissory Note and as security for the same, Frazier granted a mortgage on real property owned by Frazier and located at 4642 Ontario Drive, New Port Richey, Florida 34652.[1] (Doc. 18, Ex. C). On January 23, 2006, Secured Funding assigned the HELOC Promissory Note and mortgage to HSBC. (Doc. 18, Ex. D & Ex. E ¶ 9).

On July 20, 2006 the United States Navy ordered Frazier to report for active duty. (Doc. 18, Ex. F). Frazier transmitted her orders for the call to active duty to HSBC through facsimile on or about July 21, 2006. (Frazier Aff. ¶ 3, Doc. 16, Ex. A). However according to the affidavit of Dana St. Clair-Hougham, a corporate representative of HSBC, it was not until August 30, 2006 that HSBC "received and reviewed" Frazier's orders. (Doc. 18, Ex. E ¶ 12). Therefore, there remains a dispute about when HSBC received Frazier's orders.

The Servicemembers Civil Relief Act prohibits an entity from charging a service member on military duty interest in excess of 6 percent per year on any obligation or liability the service member incurred before entering military service. 50 App. U.S.C.A. § 527(a)(1). Any interest in excess of 6 percent is forgiven. 50 App. U.S.C.A. §527(a)(2).

---

[1] Although the Plaintiff's Complaint (Doc. 1 ¶4) and Plaintiff's Motion for Summary Judgment on the Issue of Liability (Doc. 16 ¶2) states that the mortgaged property is located at 4262 Ontario Drive in New Port Richey, Florida, the mortgage and the Home Equity Line of Credit Agreement & Promissory Note (Doc. 17, Exs. A, C) state that the property is located at different street number—4642 Ontario Drive.

The parties dispute when HSBC lowered Frazier's interest rate to 6 percent. Frazier contends that since she faxed her orders on July 21, 2006, HSBC has continued to apply "interest charges in excess of 6% . . . to Plaintiff's account and the same has never been corrected." (Doc. 16, Frazier Aff. ¶¶ 5, 7). In support of this allegation, Frazier attaches her HSBC account statements from July 2006 to September 2006. (Doc. 19, Ex. A). During these months, HSBC clearly calculated the finance charge with an interest rate of 13 percent or greater. For example, the account statement from July 2006 lists an "annual percentage rate" of 13.60 percent and a finance charge of $487.44; the August 2006 statement lists an annual percentage rate of 13.85 and a finance charge of $496.40; and the September 2006 statement lists an annual percentage rate of 13.85 and a finance charge of $480.39. (Doc. 19, Ex. A).

The over-charging of interest to Frazier's account appears to be corrected on Frazier's account statements from October 2006 until November 2008.[2] During these months, HSBC clearly calculated the finance charge with a 6 percent interest rate. (Doc. 18, Ex. I, Bates Stamp 344-72). For example, the finance charge in October 2006 was $215.05.[3] (Doc. 19, Ex. A Bates Stamp 344).

Each account statement lists two "annual interest rates." From July 2006 through July 2007, one of the annual interest rates was listed as 12.6 percent while the other was listed at either 6 percent (after October 2006) or 13.6 or 13.85 percent (before October 2006). It was not until the August 2007 statement that the account statements listed both "annual percentage rates"

---

[2] Because Frazier filed this suit on December 2, 2008, the November 2008 account statement was the most recent available statement.

[3] Dana St. Clair-Hougham explains that "[b]ased on the principal balance, from the billing cycle due on July 22, 2006 to the filing of the Complaint, Plaintiff's per diem interest charge was $6.94 ($42,200 * .06 / 365 = $6.94). Accordingly, in a 30-day billing cycle, Plaintiff's interest payment was $208.11 or less ($6.94 * 30 = $208.11) and in a 31-day billing cycle, Plaintiff's interest payment was $215.05 or less ($6.94 * 31 = $215.05). (Doc. 17, Ex. E ¶ 15).

as 6 percent. (Doc. 18, Ex. I Bates Stamp 353). It appears that Frazier refers to the two annual percentage rates as evidence supporting her claim that HSBC continued to charge interest in excess of 6 percent to her account, which "has never been corrected." (Doc. 19).

HSBC does not provide an explanation for the dual annual interest rates, and the only information about the interest rates comes from Dana St. Clair-Hougham: "My understanding on originations is when you have a secured document or a note you will have two different rates. That will show up on your truth and lending. You will have what the rate is, and then your annual percentage rate which will not be the same." (Doc. 19-3, St. Clair-Hougham Dep. at 34-35.) Frazier fails to explain how the two interest rates increased her payments above the 6 percent interest.[4] Furthermore, Frazier admits that even when her account statements reflected her original finance charge, she never paid more than 6 percent interest on the loan after ordered into active duty. (Doc. 17, Ex. B, Frazier Dep. at 18-19).

The finance charges from July to August of 2006 clearly reflect that HSBC charged Plaintiff more than 6 percent interest. However, according to HSBC, the interest rate was retroactively lowered beginning with the July 22, 2006 billing cycle. (Doc. 17, Ex. E, St. Clair-

---

[4] In Frazier's deposition she theorizes that the 12.6 percent annual interest figure affected her monthly balance. (Doc. 18, Ex. B at 49-54). For example, Frazier points to her November 2006 statement, which shows a "new balance" of $39,742.89. (Doc. 19, Ex. B at 38; Doc. 18, Ex. I Bates Stamp 345). Then, the following month her December 2006 statement lists $42,635.36 as the "previous balance." (Doc. 19, Ex. B at 38; Doc. 18, Ex. I Bates Stamp 346). However Frazier does not provide the court with a calculation or explanation demonstrating how the 12.6 percent interest rate caused the change in her balance from month-to-month, and it is clear from her deposition that she does not understand the purpose of the two interest rates. (Doc. 18, Ex. B at 50-54). Furthermore, similar changes between the "new balance" and the "previous balance" are reflected by Frazier's monthly statements from July 2007 and August 2007 and also from September 2007 to October 2007. (Doc. 18, Ex. I Bates Stamp 353-56). The statements from July 2007 and later reflect both annual percentage rates at 6 percent, so it is not clear that the former 12.6 percent interest rate affected the daily balance in the way Frazier supposes. (Doc. 18, Ex. I Bates Stamp 353-56).

4

Hougham Aff. ¶ 12.) To show that the interest rate was retroactively lowered, HSBC attaches a printout from their computer system that shows that the interest rate on Frazier's account was set at 6 percent from July 22, 2006 to September 30, 2010. (Doc. 17, Ex. G.) In addition, HSBC attaches a September 1, 2006 letter that it mailed Frazier to correct an earlier statement. The letter reads: "This letter serves to replace your recent monthly billing statement. . . . . We regret any inconvenience you may have experienced." (Doc. 17, Ex. H.) The "replacement payment coupon" that accompanied the letters shows Frazier's payment is due July 22, 2006, and sets the interest payment at $208.11, an amount consistent with a 6 percent interest charge. Id.

**B.  Facts Relevant to the Fair Debt Collection Practices Act and the Florida Consumer Collection Practices Act**

HSBC moves for summary judgment on Frazier's allegation that HSBC violated the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collection Practices Act ("FCCPA"). (Doc. 17). HSBC provides the deposition of St. Clair-Hougham to establish that Frazier did not make her July 2006, August 2006, September 2006 and October 2006 loan payments until October 26, 2006 and did not make her November 2007 payment until December 12, 2007. (Doc. 17, Ex. E). HSBC states that the phone calls made by their collections department to Frazier were an attempt to collect a legitimate debt. (Doc. 17 at 5,7).

HSBC claims it called Frazier a total of 67 times in 2006 and 2007. The total number of calls included 18 phone calls between August 2nd to August 3rd of 2006, two phone calls between August 22nd to August 23rd of 2006; one phone call on August 30, 2006, and 46 phone calls between November 27th to December 10th of 2007. (Doc. 17, ¶¶ C xii-xx). However, Frazier disputes the total number of phone calls made by HSBC.[5]

---

[5] Frazier relies on phone call logs from Bright House to show that HSBC actually made twice the number of calls it claimed in 2007. However, HSBC points out that the Bright House phone

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Id. When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue of material fact for trial. Id. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

---

calls listed each phone call twice, presumably by mistake. The Court does not need to resolve this dispute because the dispute does not create a genuine issue of material fact for trial.

## ANALYSIS

### A. Servicemembers Civil Relief Act

**1.  Frazier has a Private Cause of Action under the SCRA**

As an initial matter, the Court determines that the SCRA provides Frazier with a private cause of action.  The purpose of the SCRA is "to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service."  50 App. U.S.C.A. § 502(2).  More specifically, the SCRA protects servicemembers by requiring that

> [a]n obligation or liability bearing interest at a rate in excess of 6 percent per year that is incurred by a servicemember, or the servicemember and the servicemember's spouse jointly, before the servicemember enters military service shall not bear interest at a rate in excess of 6 percent—(A) during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage.[6]

50 App. U.S.C. § 527(a)(1).  HSBC correctly claims that the SCRA does not explicitly provide Frazier with a private cause of action under which she can seek damages.  (Doc. 18).  However, the Court finds that the SCRA implicitly provides Frazier with a private cause of action.

HSBC cites <u>McMurtry v. City of Largo</u>, in which the District Court for the Middle District of Florida found that a section of the SCRA not at issue in this case did not provide a private cause of action to a military plaintiff whose property was declared a public nuisance and destroyed by the City of Largo while the plaintiff was on active duty in Turkey.  837 F. Supp. 1155 (M.D. Fla. 1993).  The court interpreted a provision of the SCRA providing "a stay of any proceeding in which an active member of the military is involved unless the ability of such

---

[6] Congress amended the SCRA, effective July 29, 2008, to extend the 6-percent interest cap for a year after the the service member ends their military service.  However, in 2006 and 2007, the SCRA only limited interest to 6 percent while the service member was on active duty.  The law did not extend the interest rate cap for a year after military service until July 29, 2008.

military member to prosecute or defend the action is not materially affected by virtue of his service." Id. at 1157. The court reasoned that the SCRA protected the plaintiff by extending the time in which the plaintiff could appeal the city's condemnation and subsequent destruction of his building to thirty days after he returned to the United States and was no longer "materially affected" by his military service. Id. Because the plaintiff did not avail himself of the thirty-day stay, the court held that the SCRA provided no further relief. Id. at 1157-58.

However, in a case much factually closer to Frazier's situation, Moll v. Ford Consumer Finance Company, Inc., the District Court for the Northern District of Illinois held that the SCRA implicitly provided a military plaintiff with a private cause of action. No. 97-C-5044, 1998 WL 142411 (N.D. Ill. March 23, 1998). In Moll, the military plaintiff requested that Ford reduce his interest rate to 6 percent after he was activated to service in the Persian Gulf. Id. at *1. Ford never reduced the interest rate and collected the unlawful interest on Moll's loan. Id. Ford moved to dismiss the claim and argued that the SCRA provided "defensive relief" and would protect the debtor only in the event the creditor sued the debtor to collect more than the 6 percent interest accrued while the debtor was on active duty. Id. at *2.

The court in Moll recognized that Congress intended the SCRA to be "liberally construed in favor of the military person and administered to accomplish substantial justice." Id. at *2. The court examined the legislative history of the SCRA, and found that Congress intended to create a private cause of action under the statute. Id. at *4. According to the court,

> [s]ince the creditor cannot defer the interest that exceeds six percent without changing the terms of the obligation, § 526 confers a benefit on a military person that is not otherwise available to civilians. It follows, therefore, that Congress must have intended that a private right of action be available under § 526, "because otherwise the relief would [be] of no value at all." 88 Cong. Rec. 5366 (1942). That is, if no private cause of action is implied, creditors could simply

8

> ignore the mandate of § 526 and then claim that they cannot be held responsible. Congress could not have intended such a result.

Id. at *4.

Then, the court applied the Cort v. Ash four-part test to find that the SCRA implied a private cause of action in the case before it. 422 U.S. 66, 78 (1975). The four factors considered by the court included "(1) whether the plaintiff [was] a member of the class for whose benefit the statute was enacted; (2) whether there [was] any indication that Congress intended to create or deny such a remedy; (3) whether an implied remedy [was] consistent with the underlying purpose(s) of the statute; and (4) whether the cause of action [was] one traditionally relegated to state law." Moll at *3 (citing Cort v. Ash, 422 U.S. 66, 78 (1975)). In this case, as in Moll, the plaintiff is a service member, and thus, a member of the class that Congress intended to benefit by passing the SCRA. The legislative history of the Act, as explored by the court in Moll, shows that Congress intended to create a private right of action. The cause of action is consistent with the purpose of the Act—to ensure that service members during their military service enjoy a cap on interest at 6 percent on loans incurred before service. Finally, the cause of action under the SCRA is not one traditionally relegated to state law, as state law does not govern the rights of members of the United States military. Id. This Court agrees with the reasoning in Moll and finds that the SCRA implicitly provides Frazier with a private cause of action to sue HSBC.

Furthermore, this Court finds that the specific provision of the SCRA at issue in the instant case and in Moll is distinguishable from the provision at issue in McMurtry. Unlike the plaintiff in McMurtry, both Frazier and the plaintiff in Moll sued to enforce a right explicitly provided by the SCRA— the right provided by the SCRA requiring creditors to reduce the interest rate to 6 percent—which is "an undeniable benefit not enjoyed by other citizens." Moll

at *3-4. However the plaintiff in McMurtry sued to enforce his right to 30 days within which to appeal—a right provided to all citizens but protected by the SCRA while he was actively serving. Moll at *3-4. Thus, Frazier appropriately brought a private cause of action under the SCRA against HSBC.

**2.      HSBC is not liable under the SCRA**

Considering the facts in a light most favorable to Plaintiff's position, Frazier cannot offer sufficient proof to create an issue for trial that HSBC violated the SCRA. The strongest evidence in Frazier's favor are the account statements from July, August, and September of 2006 on which the finance charge is calculated with an interest rate greater than 6 percent. However, Frazier was called to active duty on July, 26, 2006 and HSBC processed her orders, and changed the finance charge by the end of August 2006. Within approximately two months of receiving Frazier's orders, HSBC complied with the SCRA by forgiving the interest charge in excess of 6 percent and by correcting the interest rate in Frazier's account retroactively, starting on July 22, 2006. Therefore, Frazier enjoyed the benefit of a 6 percent interest rate while serving abroad. HSBC worked to change Frazier's interest rate in a timely fashion, and it was not unreasonable that the July, August, and September statements inadvertently reflected Frazier's original interest charge because HSBC promptly corrected its mistake. Moreover, HSBC does not assert that Frazier owes any additional interest as a result of the incorrect billing statements. (Doc. 17 at 4 ¶ B ix). Thus, it is undisputed that Frazier does not owe any interest in excess of 6 percent for the period of her military service.

Frazier argues in her motion for partial summary judgment that HSBC is liable for violating the Act because it issued incorrect statements that, on their face, charged more than 6 percent while she served abroad in the military. (Doc. 16 at 3.) In essence, Frazier argues that

10

the Act operates as a strict liability statute, imposing liability on a defendant that charged more than 6 percent interest even if the defendant corrected the charge or otherwise compensated the service member. Neither the text of the statute, nor case law, supports this characterization.

In addition, the text of 50 App. U.S.C. § 527(a)(2) and 50 App. U.S.C. § 527(a)(3) support the reading that the statute does not impose strict liability on a creditor who inadvertently overcharges a service member but then corrects the error. Section 527(a)(2) states that interest in excess of 6 percent is "forgiven" and § 527(a)(3) says that periodic payments for improper interest or charges "shall be reduced." Thus, the law provides that a creditor should remedy an overcharge by forgiving or reducing the charge—which is what HSBC has done.

Furthermore, case law supports this reading of the statute. In Koenig v. Waukesha State Bank, No:05-C-255, 2006 WL 2334841 (E.D. Wis. Aug. 10, 2006), a military service member actually *paid* interest in excess of 6 percent in the amount of $107.45. Id. at *4. Nevertheless, the district court granted summary judgment in favor of the bank on a SCRA interest claim because the bank, while admitting that it violated the Act by charging more than 6 percent interest, had waived $1,366.30 in subsequent late payment fees to make up for the error. Under these circumstances, the court found that the law provided no remedy for the overcharging. Id.

Frazier correctly asserts that the court should interpret the SCRA "with an eye friendly to those who dropped their affairs to answer their country's call." La Maistre v. Leffers, 333 U.S. 1, 6 (1948). However, Frazier fails to put forth any evidence that HSBC continued to charge her more than 6 percent interest after October 2006[7] or that HSBC claimed she owed additional

---

[7] In her Complaint, Frazier alleges that on January 22, 2008 HSBC requested in writing an update on Frazier's term of active duty. Frazier claims she responded that her tour of duty would continue until September 30, 2009, but HSBC increased the interest rate to over 20 percent. However, the account statements attached by HSBC from this time period reflect interest rates of 6 percent, and Frazier fails to attach her own copy of the account statements or

interest as a result of the incorrect billing statements. (Doc. 17 at 3 ¶ B ix). In fact, Frazier acknowledges that she never paid more than 6 percent interest on the account after a receipt of her orders. (Doc. 17, Ex. B at 18-19). Moreover, HSBC retroactively lowered the interest rate to 6 percent, starting on July 22, 2006. (Doc. 17, Ex. G). Thus, the court finds that Frazier has shown no genuine issue of material fact to support her claim that HSBC violated the SCRA.

## B. Fair Debt Collection Practices Act

HSBC moves for summary judgment on Frazier's claim that HSBC violated the FDCPA on the grounds that it is not a "debt collector" as defined by the statute. The FDCPA applies only to "debt collectors," which are defined by the statute as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . The term does not include—(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor. . . .

15 U.S.C. § 1692a(6)(A). Furthermore, the statute defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). One element that a plaintiff must establish to prevail on a FDCPA claim in the Middle District of Florida is that the defendant is a "debt collector" as defined by the statute. McCorriston v. L.W.T., Inc., No. 8:07-cv-160-T-27 EAJ, 2008 WL 3243865, at *2 (M.D. Fla. Aug. 7, 2008).

"Debt collectors" do not include "consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." Belin

---

any other document reflecting a 20 percent interest rate.

v. Litton Loan Servicing, LP, No. 8:06-cv-760-T-24 EAJ, 2006 WL 1992410, at *2 (M.D. Fla. July 14, 2006) (quoting Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)). Through the affidavit of St. Clair-Hougham, HSBC established (a) that it is "a person who offers or extends credit creating a debt or to whom a debt is owed," (b) that the HELOC was not in default when assigned to HSBC, and (c) that the HELOC was not assigned to HSBC in order for HSBC to collect amounts owing on behalf of Secured Funding. (Doc. 17, Ex. E ¶¶ 24 & 10). Therefore the moving party, HSBC, met its burden by establishing that there is no genuine issue of material fact as to HSBC's status as a debt collector.

Accordingly, Frazier must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact appropriate for trial. Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). Frazier responds to HSBC's summary judgment motion by asserting that HSBC is a "de facto debt collector" and that whether HSBC is a debt collector is an issue of fact to be found at trial. (Doc. 19). Frazier points to a deposition in which St. Clair-Hougham describes one component of HSBC as a "collection area." (Doc. 19, Ex. B at 10). From this statement, Frazier argues that within HSBC, "[t]he separate business units have separate functions and the business unit that was clearly violating the provisions of the FDCPA should not be allowed to use the shield that is provided to bona fide creditors." (Doc. 19).

However, by directing the Court to a small portion of St. Clair-Hougham's deposition and theorizing about HSBC's internal structure, Frazier does not demonstrate a "sufficient disagreement to require submission to the jury." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Thus, the Court grants summary judgment on Plaintiff's Fair Debt Collection Practices Act in favor of HSBC because the Fair Debt Collection Practices Act excludes any non-debt collectors from its reach.

### C. Florida Consumer Collection Practices Act

The Court originally retained jurisdiction over the state law claim under its supplemental jurisdiction authority under 28 U.S.C. § 1367(a) because the state law claim was so related to the federal claim under the Fair Debt Collection Practices Act that it formed part of the same case and controversy as the federal claim. Because the Court now grants summary judgment on the federal claim, it declines to exercise its supplemental jurisdictional over the remaining state law claim. See 28 U.S.C. §1367(c)(3).

Therefore, the third claim of this cause of action is dismissed without prejudice.

### CONCLUSION

Accordingly, it is ORDERED AND ADJUDGED that Plaintiff's Motion for Partial Summary Judgment on HSBC's liability under the Servicemembers Civil Relief Act (Doc. 16) is **DENIED**, and Defendant's Motion for Summary Judgment (Doc. 17) is **GRANTED only** as to the claim under the Servicemembers Civil Relief Act and the Fair Debt Collection Practices Act.

(1) The Clerk shall enter a judgment against Plaintiff Lauren Frazier in favor of Defendant HSBC Mortgage Services, Inc. as to the first claim of the Complaint that Defendant did not violate the Servicemembers Civil Relief Act. (Compl. ¶¶ 26-28.)

(2) The Clerk shall enter a judgment against Plaintiff Lauren Frazier in favor of Defendant HSBC Mortgage Services, Inc. as to the second claim of the Complaint that Defendant did not violate the Fair Debt Collection Practices Act. (Compl. ¶¶ 30-31.)

(3) The claim that Defendant HSBC Mortgage Services, Inc. violated the Florida Consumer Collection Practices Act, as described in the second claim of the Complaint (Compl. ¶ 32), is **DISMISSED WITHOUT PREJUDICE**.

(4) The Clerk is also directed to cancel any scheduled hearings, terminate any pending motions, and close the case.

**DONE AND ORDERED** at Tampa, Florida this 19th day of November, 2009

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record